# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 15, 2015 Session

## MICHAEL G. McCONNELL v. ARMED SERVICES MUTUAL BENEFIT ASSOCIATION

**Appeal from the Chancery Court for Davidson County**
**No. 15412II     Carol L. McCoy, Chancellor**

_____

**No. M2015-01184-COA-R3-CV – Filed June 23, 2016**

_____

Employee brought action against former Employer alleging wrongful termination under the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103; the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101–102; impermissible disclosure of medical information in violation of the TDA; breach of contract; and misrepresentation in violation of the Tennessee Employment Security Law, Tenn. Code Ann. § 50-7-711. The trial court granted the Employer's motion to dismiss all claims, and the Employee appeals. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

D. Scott Bennett and Mary C. DeCamp, Chattanooga, Tennessee, for the appellant, Michael G. McConnell.

Keith D. Frazier and Thomas W. Whitworth, Nashville, Tennessee, for the appellee, Armed Services Mutual Benefit Association.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY[1]

Michael McConnell ("McConnell") was hired by the Armed Services Mutual

---

[1] The factual history is taken largely from the allegations of the complaint, which we take as true for purposes of this appeal. The quoted portions of the history are taken from the complaint.

Benefits Association ("ASMBA"), in 2002 to serve as President; he reported to the ASMBA Board of Governors ("the Board"), consisting of seven members who had the authority to make decisions regarding his employment. On April 7, 2014, McConnell was called to a meeting with the ASMBA financial consultant, Frank Bumstead, and Col. G. L. Jones, the Board Chair, at which Mr. Bumstead informed Mr. McConnell that Col. Jones and other ASMBA employees "regarded Mr. McConnell as suffering from alcoholism" and that he and Col. Jones wanted Mr. McConnell to "undergo treatment for his perceived alcoholism at a facility in Alabama." Mr. McConnell declined to undergo treatment but offered to meet with a medical professional locally. At the end of the meeting Col. Jones gave Mr. McConnell "a verbal disciplinary warning,"[2] which was the first disciplinary warning he had received.

On May 9, 2014, Col. Jones terminated Mr. McConnell "due to alleged issues arising out of his perceived alcoholism"[3]; Mr. McConnell was not given a separation notice. McConnell applied for unemployment benefits and in July 2014 received notice that he was being denied benefits because "the State of Tennessee had been informed that Mr. McConnell was terminated due to issues associated with sleep apnea."[4]

On April 1, 2015 McConnell filed a complaint challenging his termination and asserting four counts:

COUNT I
18. Defendant, through the actions of Col. G.L. Jones and unnamed others, wrongfully terminated Mr. McConnell because of his perceived alcoholism and/or sleep apnea, both of which are disabilities, in violation of the Tennessee Disability Act and Tennessee Human Rights Act.

COUNT II
19. Defendant, through the actions of Col. G.L. Jones and unnamed others, made improper and nonpermissible disclosures of Mr. McConnell's private health related information in violation of the Tennessee Disability Act.

---

[2] The complaint does not state the nature or content of the warning.

[3] The complaint alleged that Col. Jones stated that the entire Board was in agreement that Mr. McConnell be terminated but that Mr. McConnell later learned that two members of the Board were not aware that he was going to be terminated.

[4] Attached to the complaint was an Agency Decision from the Division of Employment Security, Tennessee Department of Labor and Workforce Development stating, in pertinent part:

Claimant was discharged from most recent work for sleeping on the job. This violated standard employment practices. The record shows discharge was due to claimant sleeping on the job due to his diagnosed sleep apnea condition. Employer reports claimant had been warned prior to discharge.

2

## COUNT III

20. Defendant, through the actions of Col. G.L. Jones and unnamed others, breached its contract with Mr. McConnell by violating its own Disability, Discipline, and Privacy policies, which are specifically outlined in the Defendant's Employee Handbook.

## COUNT IV

21. To the extent that the document attached to this Complaint as Exhibit A indicates that Defendant, through one or more of its agents, told the State of Tennessee that Mr. McConnell was terminated due to his sleep apnea, Defendant misrepresented the reason for Mr. McConnell's termination to the State of Tennessee in violation of Tenn. Code Ann. § 50-7-711.

ASMBA moved to dismiss the complaint for failure to state a claim in accordance with Tenn. R. Civ. P. 12.02(6), and the Chancery Court granted the motion. With respect to Count I, the court held, in pertinent part:

> After a careful analysis of the complaint, taking the allegations in the light most favorable to the Plaintiff, this court finds that while Plaintiff has alleged an impairment, alcoholism, he has failed to allege that he was regarded as being substantially limited in a major life function due to that impairment. Consequently, Plaintiff has failed to make the threshold showing that he was a qualified individual with a disability as that term is defined by the Tennessee Disability Act and the Tennessee Human Rights Act.

With respect to Count II, the court held that the Tennessee Disability Act ("TDA") does not make disclosure unlawful and, in any event, the information at issue in the case was not medical information. As the basis of dismissing Count III, the court held that the ASMBA employee handbook did not constitute a contract. As to Count IV, the court acknowledged that Mr. McConnell agreed that Tenn. Code Ann. §50-7-711 does not provide a private cause of action.

Mr. McConnell appeals the dismissal of Counts I and II, articulating the issues as follows:

> (1.) Whether the Chancery Court applied the incorrect standard for dismissal under Tennessee Law.
> (2.) Whether the Chancery Court erred in finding that the complaint failed to state a claim for relief.

## II. STANDARD OF REVIEW

The standard to be applied when a trial court considers a Tenn. R. Civ. P. 12.02(6) motion was set forth in *Webb v. Nashville Area Habitat for Humanity*:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009); *Willis v. Tenn. Dep't of Corr*., 113 S.W.3d 706, 710 (Tenn. 2003); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1977). The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp*., 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002); *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc*., 878 S.W.2d 934, 938 (Tenn. 1994); *Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975) (overruled on other grounds by *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 899-900 (Tenn. 1996)). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc*., 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)); *see Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007); *White v. Revco Disc. Drug Ctrs., Inc*. 33 S.W.3d 713, 718 (Tenn. 2000); *Holloway v. Putnam Cnty*., 534 S.W.2d 292, 296 (Tenn. 1976).
>
> In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp*., 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med*, 71 S.W.3d at 696); *see Leach v. Taylor*, 124 S.W.3d 87, 92-93 (Tenn. 2004); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *Bellar v. Baptist Hosp., Inc*., 559 S.W.2d 788, 790 (Tenn. 1978); *see also City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 54 (Tenn. Ct. App. 2004) (holding that courts "must construe the complaint liberally in favor of the plaintiff by . . . giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts"). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); *see Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Pemberton v. Am. Distilled Spirits Co.*, 664

4

S.W.2d 690, 691 (Tenn. 1984); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn. 1978); *Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 759-60 (Tenn. 1977). We review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*. *Brown*, 328 S.W.3d at 855; *Stein*, 945 S.W.2d at 716.

*Webb*, 346 S. W.3d 422, 426 (Tenn. 2011).

### III. ANALYSIS

At the outset, we address Mr. McConnell's contention that the trial court adopted a standard for adjudicating the motion to dismiss which "improperly required the Plaintiff to put forth all necessary proof in support of the assertions made in his Complaint in order to merely survive the Defendant's motion to dismiss." The argument in Mr. McConnell's brief on this point is conclusory and does not specify the manner in which he asserts the court committed this error. He correctly recites the requirement of Tenn. R. Civ. P. 8.01 that the complaint set forth "a short and plain statement of the claim" and the requirement set forth in *Webb* that the complaint be liberally construed when facing a motion to dismiss. However, we do not agree and cannot conclude from the record, as more fully explained below, that the court "analyz[ed] the Complaint under a stricter standard than is properly applied under Tennessee law" and "required that the Plaintiff put forth all necessary proof and all such support for that proof at the pleading stage, ultimately and erroneously resulting in the dismissal of the Complaint."

We proceed to analyze whether the allegations of the complaint state a claim for relief in accordance with the applicable rules and other authority. In so doing, we refer to the following language in *Webb*:

> Under Tennessee Rule of Civil Procedure 8, Tennessee follows a liberal notice pleading standard, *see Leach*, 124 S.W.3d at 92-93, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010); *see also* Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5-4(a) (3d ed. 2009) ("The essential function of the pleadings is simply to give notice of a claim or defense. History, as Professors Wright and Miller point out, has shown that the pleadings cannot successfully do more.") (footnotes omitted). Our state's notice pleading regime is firmly established and longstanding; this Court recognized well before the Tennessee Rules of Civil Procedure were adopted that "[t]he object and purpose of an pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried." *Hammett v. Vogue,*

5

*Inc.*, 165 S.W.2d 577, 579 ([Tenn.] 1942).

To be sufficient and survive a motion to dismiss, a complaint must not be entirely devoid of factual allegations. Tennessee courts have long interpreted Tennessee Rule of Civil Procedure 8.01 to require a plaintiff to state "'the facts upon which a claim for relief is founded.'" *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986) (quoting *W & O Constr. Co. v. City of Smithville*, 557 S.W.2d 920, 922 (Tenn. 1977)). A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." *Abshure*, 325 S.W.3d at 103-04. "The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." *Id.* at 104. Thus, as we observed in *Leach*,

"While a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, *it must contain direct allegations on every material point* necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, *or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial*."

124 S.W.3d at 92 (quoting *Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn. 1977)) (alteration in original); accord *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 399 (Tenn. 2002). Moreover, courts are not required to accept as true assertions that are merely legal arguments or "legal conclusions" couched as facts. *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1977).

*Webb*, 346 S. W.3d at 426-27 (emphasis in original).

### *Count I: Tennessee Disability Act*

Count I alleges that Mr. McConnell's termination violated the Tennessee Disability Act, which states, in pertinent part:

There shall be no discrimination in the hiring, firing and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required

6

by the employment sought or impairs the performance of the work involved. Furthermore, no blind person shall be discriminated against in any such employment practices because such person uses a guide dog. A violation of this subsection (b) is a Class C misdemeanor.

Tenn. Code Ann. § 8-50-103(b). To prevail on a claim under the TDA, a claimant has the burden of showing:

(i)    he or she was qualified for the position,
(ii)   he or she was disabled, and
(iii)  he or she suffered from an adverse employment action administered because of that disability.

*See Bennett v. Nissan North America, Inc.*, 315 S.W.3d 832, 841(Tenn. Ct. App. 2009). "Disability" is not defined in the TDA; rather, courts have adopted the definition contained in the Tennessee Human Rights Act ("THRA"):

(i)    A physical or mental impairment that substantially limits one or more of such person's major life activities;
(ii)   A record of having such an impairment; or
(iii)  Being regarded as having such an impairment.

Tenn. Code Ann. § 4-21-102 (3)(A). *See Bennett,* 315 S.W.3d 832 at 842 (citing *Barnes v. Goodyear Tire & Rubber Co.,* 48 S.W. 3d 698, 705(Tenn. 2000) (abrogated on other grounds by *Gossett v. Tractor Supply Co. Inc.,* 320 S.W.3d 777 (Tenn. 2010))).

In his brief on appeal, Mr. McConnell does not identify specific factual allegations in the Complaint which address the three necessary elements of a claim under the TDA.[5] In our review of the Complaint, we have identified the following paragraphs which relate to the elements of a TDA claim:

6.   Mr. McConnell was hired by the defendant in 2002 to serve as its President. He held the title of President from the date of his hire until the date of his termination on May 9, 2014.
***10.  Upon arriving at Mr. Bumstead's office, Mr. McConnell learned that Col. Jones had told Mr. Bumstead that Col. Jones and other ASMBA employees regarded Mr. McConnell as suffering from alcoholism. Though Col. Jones was present during this meeting, Mr. Bumstead relayed this information to Mr. McConnell. Mr. Bumstead then told Mr. McConnell that he and Col. Jones wanted Mr. McConnell to undergo treatment for his perceived alcoholism at a facility.

---

[5]   The parties do not dispute that Mr. McConnell was qualified for the position he held.

11.  Mr. McConnell was upset by these comments as he does not suffer from alcoholism.  Compounding that, he was angered that Col. Jones had relayed his private, health-related information to Mr. Bumstead and then directed Mr. Bumstead to lead the discussion centered around this private information.

\*\*\*

13.  On May 9, 2014 approximately one month after the April meeting, Col. Jones told Mr. McConnell that he was being terminated due to alleged issues arising out of his perceived alcoholism.

\*\*\*

16.  In June of 2014, Mr. McConnell applied for unemployment benefits from the State of Tennessee. In July 2014, he received notice that he was being denied unemployment benefits. The stated reason for denial was that the State of Tennessee has been informed that Mr. McConnell was terminated due to issues associated with sleep apnea.

While Mr. McConnell does not clearly identify the specific manner in which he contends he was "disabled" for purposes of stating a claim under the TDA, he does assert at various points in his brief that he was regarded as having an impairment.  *See* Tenn. Code Ann. § 4-21-102(3)(A)(iii).[6]  The only allegation of the complaint which touches on § 4-21-102(3)(A)(iii) is the statement in paragraph 10 that "Col. Jones had told Mr. Bumstead that Col. Jones and other ASMBA employees regarded Mr. McConnell as suffering from alcoholism."  Taking the allegations of paragraph 10 as true and affording Mr. McConnell the appropriate inferences arising therefrom, we are of the opinion that the complaint sufficiently alleges that Mr. McConnell was perceived as having "an impairment."  This, however, does not end our inquiry; there must also be the allegation that "such" impairment "substantially limits one or more of such person's major life activities."  *See Bennett*, 315 S.W.3d at 846; Tenn. Code Ann. § 4-21-102 (3)(A)  The complaint fails to satisfy this requirement.

Mr. McConnell contends, in the alternative, that the complaint adequately pleads that he was substantially limited in the major life activity of working.  However, he does not cite us to and we have not found any such language in the complaint.  Alleging a "disability" as defined by § 4-21-102(3)(A) is a threshold issue and cannot be circumvented.

As to the third element of a TDA claim — that the claimant has suffered from an adverse employment action because of the disability — Mr. McConnell contends that the allegation in the complaint that he was terminated "due to alleged issues arising out of his

---

[6]  Mr. McConnell does not argue that he was "disabled" according to Tenn. Code Ann. § 4-21-102(3)(A)( ii).

perceived alcoholism" is sufficient. In light of our holding that Mr. McConnell did not allege sufficient facts relative to the second element of a claim under the TDA, we do not reach the argument regarding element three.

At the trial court, Mr. McConnell made what the court called a "secondary argument" that the Department of Employment Security finding that he was terminated for sleep apnea "raises questions of fact as to the real reason for his termination and is evidence of shifting explanations for this action." The court held that since Mr. McConnell "acknowledged in his charge filed with the Equal Employment Opportunity Commission that sleep apnea had not been raised as a possible concern until after his termination, the Court finds that it could not have influenced ASMBA's decision to terminate McConnell's employment." As to the concern regarding the shifting explanation, the court held that since McConnell could not establish a *prima facie* case of discrimination, consideration of the argument that there was a question of fact as to the real reason for his termination was premature. On appeal, Mr. McConnell does not assign error to the trial court's holding in this regard and concedes that the allegation is "more relevant to the issue of pretext." Inasmuch as we have held that Mr. McConnell did not satisfy the pleading requirement to state a claim under the TDA, it is not necessary to address this matter.

### *Count II: Disclosure of Medical Information*

We next address Mr. McConnell's contention that the trial court improperly dismissed Count II of the Complaint, in which he alleged that the ASMBA disclosed his medical information in violation of the TDA. He asserts that "the Complaint sets forth a relevant and sufficient allegation that, by confronting the Plaintiff with this [private health] information, the Defendant, through its agent, improperly inquired into the Plaintiff's perceived disability." The Chancery Court held:

> With regard to Plaintiff's claim of improper disclosure of medical information, the Court finds this claim fails for two reasons. First, the Court finds that unlike the federal Americans with Disabilities Act, the Tennessee Disability Act does not include a provision that makes the disclosure of medical information unlawful. The Court further finds that even if such claim could be based on the Tennessee Disability Act, the information at issue in this case does not represent medical information. Consequently, Plaintiff's claims in Count II of the Complaint are dismissed.

Mr. McConnell acknowledges that "the TDA does not explicitly reference or prohibit disclosure of private health information" and argues that the court should "adopt the privacy provisions of the ADA [Americans with Disabilities Act] in assessing an employee's claim under the TDA."

9

Tennessee courts may look to federal law for guidance when enforcing state law where the federal law is consistent with the state law. *Bennett* 315 S.W.3d at 841. This is not appropriate in the present case, however, where Mr. McConnell is asking that we graft a provision of the Americans with Disabilities Act, 42 U.S.C. § 12112(d)(4)(A),[7] onto the TDA. This we cannot do, as to do so would be to effectively amend the TDA, which is a legislative function.

In light of our holding that the TDA does not include a provision prohibiting the disclosure of employee health information, we do not address whether the information in dispute is "medical information."

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

RICHARD H. DINKINS, JUDGE

---

[7] 42 U.S.C. § 12112(d)(4)(A) states:

(d) Medical examinations and inquiries
***
(4) Examination and inquiry
(A) Prohibited examinations and inquiries
A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.